Good morning, Your Honors. May it please the Court, my name is Chagor Subramaniam, and I'll be appearing for the appellants in all three matters, including this one, 17-56056. 56056? Yes. I thought it was 5-7. Oh, 5-7, sorry, I wrote it down. My apologies, Your Honor. Although I understand the Court's desire to hear oral arguments separately, but given many of the overlapping legal issues, I'd like to avoid making redundant arguments. So my plan of attack is to address all of the issues in this matter, then most of them will be overlapping, and then when we get to the next matter of the consolidated appeal, simply focus on those unique issues to those appeals, if that's all right with the Court. All right. Okay. With that, I'd like to reserve five minutes for rebuttal in this matter. All right. You know, this appeal arises from an unusual set of facts. You know, rarely is there a situation where the union fails to prosecute a meritorious grievance for years and allows the statute of limitations to lapse, and then after the employees have obtained legal counsel and filed a legal action, does the union initiate a grievance, and then while a claim for breach of the duty of fair representation is pending, does the union reach a settlement with the employer? You know, having laid that foundation, the first issue I'd like to address is the breach of the duty of fair representation claim against the union appellee SAG-AFTRA. Now, the union argues that its failure to initiate a grievance within the statute of limitations is an exercise of judgment within the union's discretion. Now, I do not dispute that unions are afforded a degree of discretion when evaluating grievances on the merits. However, that discretion is not absolute, as the Supreme Court noted in Vacaville-Sipes. You know, this Court has held that when challenged conduct is based not on a decision about how to handle the grievance, but on the failure to perform ministerial acts, judicial deference to the union serves no purpose. The case law is clear that the union breaches its duty where it engages in ministerial error, such as allowing the statute of limitations to expire on a meritorious grievance. As this Court has held, keeping track of deadlines is a mechanical function that depends on establishing a tickler system and diligence in using it, not in special training. Simply put, there is no strategic or tactical advantage for filing a meritorious grievance after the statute of limitations has expired. Now, the union and the trial court rely on the union's subsequent settlement while this action was pending to support a finding that the union's lapse did not completely extinguish the employee's rights to pursue his claims. Now, I believe this position is inconsistent with the Court's prior ruling in this matter when it held that post-complaint conduct cannot moot a claim for punitive or monetary damages, as this Court may still grant effective relief of prior misconduct if proven on the merits. Sotomayor, are you saying that the prior decision on this case resolved the issue of the breach of duty? No. It didn't address that issue, right? I don't mean to suggest that. What I mean to suggest is that there is a tension, because previously the Court was addressing whether or not the settlement agreement mooted the breach of duty of fair representation claim. And it said that post-conduct after the breach shouldn't, you know, affect adjudication of the breach of the duty of fair representation. Here, that same argument is essentially being repackaged in a different form, although they're not saying that it mooted the claim. They're saying that the settlement is evidence that there wasn't a complete extinguishment. Even with that argument, though, if the settlement effectuated relief to the plaintiffs, then what is left of the breach of duty action? Well, the breach of the duty, so there are two issues. One is the relief based on the payment from the employer, but the union can only recover for claims that are within the statute of limitations. The union is still responsible for the differential based on what would have occurred had they not allowed the statute of limitations to lapse. And, you know, there's case law on that. And it also sets a bad public policy. I think adopting the union's proposed narrow interpretation would essentially shield a union from liability by allowing a union to initiate a grievance after a breach of the duty of fair representation and legal action has been taken, and then settle potentially at a subpar value with the employer to avoid culpability. That would create an inherent conflict of interest between the union and its members. And I don't believe that's what the Supreme Court intended in Vaca v. Sipes, nor do I believe is that what the case law supports. Let me make sure I understand the facts here. There were certain claims on which the statute of limitations was about to run. Your clients, I think there's in the record indicated that they repeatedly asked the union to move forward, and the union dragged its heels. So even though the union thereafter, after your clients had filed a lawsuit, finally initiated a negotiation with the employer and got a settlement, that settlement was not a settlement. That settlement did not affect the claims that had been totally extinguished because of the union's failure. Do I have that right, or am I missing something? That's correct, Your Honor. And, you know, I would also add that I believe that there is a conflating that's occurring that is misinterpreting the juicery act decision. There's a distinction between a grievance that includes multiple claims and the claims themselves. Now, here, unlike Doustriac in the cases at the defendant's side, the grievance encompassed multiple claims for unpaid residuals, and it was ongoing. And the lapse in the statute of limitations completely extinguished those claims. It may not have completely extinguished the grievance, but complete extinguishment of the grievance is not required, nor is it supported by any of the case law. Counsel, is there an exhaustion issue for this claim? Well, there's no exhaustion issue for the claim of a breach of the duty of fair representation, because there's no separate arbitration agreement. There's no agreement of any kind between the union members and the union itself. So there's no exhaustion requirement as to the DFR claim. And if sufficient allegations are pled in the complaint for the duty of fair representation claim, then that would be a basis to proceed in federal court as to the employer defendants. So, in short, no as to the DFR claim, and we don't believe one arises as to the claim of a breach of the duty of fair representation. Can I ask you about your third cause of action, I guess, what I've been calling the third cause of action? You argue the producers not provide you with accurate wage statements. Is your allegation that they didn't provide you with accurate or with any wage statements? Well, it's both. There were some wage statements that were provided, but they failed to account for the relevant statutory penalties under that cause of action, so they were inaccurate. And then they failed to provide any wage statements for all the residuals that they didn't pay. Now, as to the third cause of action, the trial court found that that cause of action was preempted. So I think this is a good opportunity to discuss the preemption argument. The trial court found that the third cause of action and the seventh cause of action were preempted. That's the private attorney general act claim. Correct, and the logic there was because the third cause of action was preempted, the seventh cause of action was preempted as well. So I think this, the factual scenario here is unique. So I understand how, or at least I'm doubtful that there's any preemption where they didn't issue any wage statements at all, which you say is part of that claim. But when you say as to where they did issue a statement, you say they were inaccurate, did that inaccuracy in any way involve an interpretation of the collective bargaining agreement? I don't believe it involved an interpretation of the collective bargaining agreement. It may involve reading the collective bargaining agreement, but here there's not really a reading of the collective bargaining agreement. And the case law is clear that a reading does not rise to the level of interpretation such to activate preemption. You know, there's no dispute here that the employer... In other words, if there's a formula set forth and there's no dispute about how the formula should be applied, the fact that you have to apply the formula in the contract doesn't lead to preemption. Exactly, Your Honor, and you may not even have to get to that point in order to determine liability. That's more of a damages issue because the defendants acknowledge, there's evidence that the defendants acknowledge that they didn't pay the residuals. I'm going to reserve my remaining time for rebuttal. Actually, sorry, one more point. You know, I would just note that this leave to amend was not granted in this matter, and there are multiple allegations set forth in our papers, particularly including the bad faith conduct and motivating factors for the catalyst doctrine that we believe could be added to rectify the deficiencies that the appellees have raised. Doesn't the catalyst theory only come into play where there's a fee-shifting statute? The catalyst doctrine? Well, it depends because, well, I think that's true, but I don't think the... No, there's no fee-shifting statute here. Well, I would disagree. If you look at the Dustriac decision, they actually awarded attorney's fees based on the breach of the duty of fair representation, and they argued that it was actually part of damages. It was not in violation of the American rule because, and that's the decision that the defendants rely on primarily, because here it's in order to effectuate the rights the employees had to obtain the attorney, and the Dustriac decision made a distinction and permitted attorney's fees to be recovered in this type of case. So we would argue that attorney's fees are recoverable, and to the extent that the statutory claims are preempted, the attorney's fees provisions for those statutory fees would also perform. But you would agree that the catalyst theory does not apply to Federal claims? I would not agree with that. You don't agree? Okay. I would reserve my remaining time for a bottle. All right. Thank you. Thank you, Your Honor. Did you have a question? Yeah, on the attorney's fees, you're saying you're entitled to bring it as a separate cause of action. Why? What's your best authority, and not as just relief, like in other typical... Well, admittedly, Your Honor, that was a pleading decision, and I think there's ambiguity as to whether or not it's a prayer for relief or a separate cause of action, but we want it to be very clear. And the complaint that we were pursuing that, and so... I guess, what's your authority for alleging it as a separate cause of action? You may have sense right now, but I didn't catch that. I'm not aware of any authority one way or the other, Your Honor. So we pled it in what we thought provided the most notice. All right. Thank you, counsel. Good morning. May it please the Court, Lisa Deminovich of Bush Gottlieb on behalf of Screen Actors Guild, American Federation of Television and Radio Artists. SAG-AFTRA negotiated a really good settlement, taking not one penny from the $1.4 million, all distributed to performers, including Ms. Pauley and Mr. Clark, by 2015. Why would SAG take anything from the settlement? Right, they wouldn't, and that's not how it set up. Well, when you say it was a good settlement, it was 75% of what they were owed, yes? That's correct, and the reason why it was 75%... Why wasn't it 100%? Because the union took into account the financial state of the employer. It looked at its records and determined that if it went all the way to arbitration, it was possible that the company could be bankrupt by then, and they may not get anything. And that if we took it now, it was a guaranteed payment to the performers. And the Court has said before in Berkovich that that's a reasonable decision. There was only one-sixth of the amount that was potential. Why did you wait to even bring, to even initiate this, until after the plaintiffs had to file their lawsuit because you had not responded with action to their numerous requests? So it's important to note that in 2012, when this lawsuit was filed, the union was not named as a defendant. And when they filed the grievances, the union was not a defendant. And what difference does that make to the inaction of the union previously? Well, it means that the union wasn't doing it in response to litigation against itself, and that while it's unfortunate the amount of years that passed, there's no prejudice that can be shown against the union. What about the claims that were extinguished? Well, as to the union, there was no claim that was extinguished, and the only issue is the residuals claim that was under the collective bargaining process. And while... I'm sorry, maybe I'm misunderstanding your point. So are you agreeing, then, that the portion of the claim against the union now asserted for the failure, for allowing certain claims to be used against the union? So the only claim against the union is the residuals, involving the union under the contract is residuals claims. I understand there's other issues, state court, state law actions involving the other parties to this case. But as far as the union is concerned, under the collective bargaining agreement, the issue is residuals. And there was no discounting of the residuals for purposes of timeliness. Timeliness is an argument that can be waived. It's an affirmative defense that must be asserted, and it was never asserted at any point during this process. And it's really important that the court recognize that. While I heard counsel for the appellate say that there was untimeliness and things, and claims were lost, that is not true. Well, let me, help me understand your argument, then. Are you saying, then, that the claims for residuals were not barred by the statute of limitations? That's correct. Well, it could have been, but it wasn't assertive. And therefore, when you look at the cases like Dutrasac, where there was an arbitrator finding that it was untimely, that is different from this case, where it was never asserted, and therefore could be... You mean it was never asserted? It was never asserted by whom? By the employer. The employer could raise it as a defense to payment, and it has never been raised in this case. And the Supreme Court has said that the courts are not to make determinations about untimeliness, that that is a decision for the arbitrator. And that's from John Riley and Sons v. Livingston back in 1964. The arbitrator is to make those decisions. And this Court's precedent, where there was a finding... So essentially, you're saying no harm, no foul. Assuming arguendo that the union blew it in terms of allowing the statute of limitations to expire, if the employer doesn't assert that as a defense to any claim for residuals, there's no prejudice, therefore. Do I have your argument? Well, that's based on the Ninth Circuit case law. I mean, that's based on findings where... I just want to make sure I understood your argument. That's the argument, but it's based on cases like Peterson and Dutrasack, where you have an arbitrator's finding that it was untimely, and then you come back. I mean, I would really caution the Court to think about what the implications would be if you take a determination that just merely pleading untimely, when in fact that is not actually a factor in the record, what that would open up the unions to all kinds of cases that up to this point would not survive a motion to dismiss. Untimeliness comes up all the time. I represent unions in all different industries, private and public sector, and it's raised, you know, maybe what happened was the parties were discussing it and they didn't file right away under the timelines. Maybe there was an agreement to extend. Maybe they sent it by letter and e-mail, but the letter was late and the e-mail was on time. Maybe it was that the parties have a history of not following those timelines. All of those are reasons by which an arbitrator can decide that even an asserted untimeliness argument is in fact not grounds for saying it's not arbitrable. So I'm looking at the Dutrasack case, and I want you to point me to the specific language that you're relying upon to support your argument that the timeliness issue does not present a problem for you. So in Dutrasack, where it's looking at a termination decision, so it's important. It's on pages 1273 and extending on to 1274. So it's right at actually the 1274 mark. A requirement that the union timely pursue those grievances it has decided to pursue does not interfere with the union decision making. If you continue down, if the collective bargaining agreement does not allow enough time for investigation, the union can negotiate to lengthen the contractual time for filing grievances. That's not saying what you represented that the decision said, that if the other party doesn't raise the timeliness issue, then there are no damages to the employees. This case found a breach of the duty of fair representation. In this case the agreement was terminated, and therefore there was first off I want to point out that there was a strong individual interest, and this court has only found a strong individual interest in cases of discharge, not in cases that belong to the entire unit such as residuals. But second, the arbitrator, if you look at on page 1272, it specifically says the arbitrator ruled that the grievance was untimely and therefore not arbitrable. There was an actual finding by an arbitrator that it was untimely that impacted his ability to be reinstated and receive back pay. All right, counsel. You've exceeded your time. Thank you. Thank you. Any further argument would be an exercise in untimeliness. Save it for the next case. Rebuttal. Good morning. May it please the court. My name is Saul Brenner. I'm here representing the defendant, the appellees other than the union. In other words, CF Entertainment and the other producer appellees in this case. I'm not going to address the duty of fair representation claim against the union unless the panel has any debate about that. The assertion by the union counsel was that the employer chose not to assert an untimeliness in the negotiations or at any other point with respect to certain of the claims for residuals. Is that correct? That's correct. There was a settlement that was negotiated, $1.4 million. Timeliness did not play a factor in the negotiation. It was a compromise like many settlements are. From my client's standpoint, it was a difficult settlement to swallow because they thought they had other defenses, but the claims were settled and the settlement was paid in full. There are six causes of action assert against my clients that were dismissed by the district court and are now here on appeal. One of them, the breach of contract claim for failure to pay residuals, as we've argued in our papers. We think that there's a serious exhaustion issue there. In addition, we think the claim is preempted. Why is the claim preempted? Under section 301 of the LMRA, the claim is preempted because it satisfies the test for preemption. Why would the collective bargaining agreement have to be interpreted in order to resolve that claim? Well, it's for reasons similar to why the failure to pay residuals is preempted. Labor codes claim this third cause of action is preempted. It's not that we've certainly read appellant's counsel's papers where they claim that this is just a calculation, you just plug in a number, but that's not the case. What provisions of the collective bargaining agreement would have to be interpreted in order to resolve the claims under the labor code? You never seem to argue that any of the provisions were vague, so I'm trying to understand that myself, so if you could. Well, there's actually three different steps that would have to be gone through in interpreting the after-network code. The first one is whether the plaintiffs in this case were preempted. They were covered performers under the network code. The second one is assuming that the plaintiffs were covered performers. You have to analyze the specific performer classification, and then the third step is an analysis. Once you determine the performer classification, it's an analysis of which of the residuals formulas applies, which in turn is based on analysis of the market or markets in which this particular show comments. But all that shows that it's a complex determination, but I think the question that was being put to you was, how does it require an interpretation of the collective bargaining agreement? One could well imagine a collective bargaining agreement that said there are three tiers, and we're going to look at each of the three tiers. Within their tiers, there are sub-tiers, and then within each sub-tier, there are various steps that have to be calculated. But if everything was clear, it's still a ministerial calculation. It's not an interpretation problem. Well, you know, I think I have a different, I may have a different interpretation of interpretation. Is there any real dispute here regarding the first two steps of your three-part analysis, that Pauli and Clark are entitled to receive residuals under the CBA, and the kind of performers that Pauli and Clark are under the CBA? I mean, if there was any dispute as to whether Pauli and Clark were entitled to receive residuals under the CBA, how then could you possibly argue that the plaintiff's first cause of action, for example, fails because plaintiffs did not exhaust the CBA's grievance procedures? Well, that's a fair point. I mean, I was trying to address a different point, which is, what is the analysis that you would have to go through under the network code to get to a point where you could figure out the residuals? But no, we don't dispute that these individuals are covered performers under the network code. I mean, they're purporting to represent a class of people. We never even got to that. But we don't know if everybody they're purporting to represent would be a covered performer. But as to those individuals, that isn't really in dispute. Some of the other issues may be. We haven't gotten to that stage. Are there any more questions on this issue? Do you see the wage claims and the accurate wage statements as being two separate analysis? I'm asking. I'm not sure I understand your question, Your Honor. There was a cause of action based on the wage claims, failure to pay the wages. And then a second one was whether or not there were accurate wage statements. And so I was just asking you whether or not you see those as two separate claims. Well, I think they are. I mean, one is, you know, one is a failure to pay wages. That's the fourth cause of action. The third one is a failure to provide accurate wage statements. Is either of those barred by the statute of limitations or both? We think they all are, all of the labor code claims. Now that, you know, it's fair to say, fair to point out that we haven't gotten to the other case yet. But in the other case, Judge Reel found that the second and fourth, in this case, the unreimbursed business expenses and the failure to pay wages were barred by the statute, as he did in this case. But in the other case, Judge Reel found that the failure to provide accurate wage statements claim was not tied to the time barred. In this case, he didn't reach that issue because he found that that claim was preempted. I just wanted to get your viewpoint on the statute of limitations. Yes, we think all the labor code claims are clearly preempted. There was, you know, the plaintiffs, by their own allegation, completed their services, you know, much more than three years before their, by their own allegations, completed their services far more than three years before their initial complaint was filed. But would you agree that every time there is an inaccurate wage statement that a cause, a claim accrues, each time there is an inaccurate wage statement that's given to an employee? No. I mean, that was what Judge Reel thought. Why not? Well, because the, we've spelled that out in our papers. Well, tell me now. Okay. So the failure to provide accurate wage statements runs from the time that the wages were due. And the, in this case, the wages were due as of the time that the plaintiffs completed their services. But aren't the wages due each time, each period of time they complete their services, aren't the wages due? Well, they completed their services in April 2007. So are you saying that they were no longer employed? Correct. They finished their services, they were employed and they completed their services in April 2007, if I'm, and that's what their own third amended complaint alleges. That's our position. Thank you, counsel. Thank you, Your Honor. With regard to SAG-AFTRA's points, I'd like to point out that, look, this took years before there was the initiation of a grievance. And although the union may say no harm, no foul right now, we're at the pleading stage. So, you know, there's no evidence in the record that the union, you know, calculated all the residuals, had access to all the records to calculate the residuals. And, in fact, there was no harm. That's not before the court right now. What is before the court is whether we have pled sufficient facts based on our allegations for a breach of the duty of fair representation claim. And I think it also creates a very problematic policy to allow a union and an employer to characterize the nature of a settlement after the breach has occurred and while a pending claim for breach of the duty of fair representation has occurred. This case never got to arbitration. There's no evidence in the record besides counsel's statements right now that, you know, they were not considering the timeliness issue. So I would urge the court not to consider that either. I think the Pursuit and Caputo cases that we cited, which although are from other districts and not controlling on this court, offer some guidance because they involve situations in which settlements were breached and there was a breach of the duty of fair representation. And I believe, at least in Caputo, they did rely on the Deucery Act decision and the courts found that the settlements did not negate the breach of the duty of fair representation claim. Did the settlement in this case say anything about timing? I'd have to review it. I mean, supposing hypothetically you had a settlement that said, this is a settlement of all wage claims from X date to Y date, and that included the date that allegedly was on the agenda. That's untimely. Wouldn't that be clear evidence that the employer had chosen not to assert that and was taking this as a global settlement? No, Your Honor, I would disagree with that. That has to do with the nature of the release and what release. The union can release a number of claims. It has standing to release those claims. The question is whether there was harm because of the breach of the duty of fair representation, and whether had the union not allowed the statute of limitations to expire, whether the settlement would have been for more, and if so, they'd be responsible for that. I'm out of time, Your Honor. I just wanted to ask you about, and perhaps you want to address this in the next case about the wage claims. So if you prefer to address those in the next appeal, that would be fine, too. I'm happy to answer it. I'll wait when I have more time. All right. Thank you. Then this case is submitted for decision, and we call for argument on Polly v. CF Entertainment, case number 17-56099 and 17-56100.
judges: Rawlinson, Murguia, Rakoff